IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JAMES ALLEN LONG                                    PETITIONER


v.                        Case No. 5:06CV00238  JLH-JFF



LARRY NORRIS, Director,
Arkansas Department of Correction                   RESPONDENT


## REVISED PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District

Court Judge J. Leon Holmes.  Any party may serve and file written objections to this

recommendation. Objections should be specific and should include the factual or legal

basis for the objection.  If the objection is to a factual finding, specifically identify that

finding and the evidence that supports your objection.  An original and one copy of your

objections must be received in the office of the United States District Court Clerk no

later than eleven (11) days from the date of the findings and recommendations. The

copy will be furnished to the opposing party.  Failure to file timely objections may result

in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new,

different, or additional evidence, and to have a hearing for this purpose before the

District Judge, you must, at the same time that you file your written objections, include

the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence proffered at the hearing before the District
      Judge  (if such  a  hearing is granted)  was not  offered at  the
      hearing before the Magistrate Judge.

3.    The detail of any testimony desired to be introduced at the
      hearing before the District Judge in the form of an offer of
      proof,  and a copy,  or the original, of any documentary or
      other non-testimonial evidence desired to be introduced at
      the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional

evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## DISPOSITION

Before the Court is the Petitioner's petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254.  For the following reasons, the Magistrate Judge undersigned

recommends that the petition be dismissed with prejudice.

## BACKGROUND

### I.  State Court Proceedings.

### A.  Trial and Direct Appeal.

On June 12, 2003, Petitioner was convicted of aggravated robbery and first-

degree battery after a jury trial in Pulaski County Circuit Court.  On July 16, 2003, he plead no contest to the charge of felon in possession of a firearm.  Petitioner was sentenced as a habitual offender to thirty (30) years' imprisonment on the aggravated robbery conviction, fifteen (15) years' imprisonment on the first-degree battery conviction, and fifteen (15) years' imprisonment on the felon in possession conviction. The circuit court ran the sentences concurrently. Petitioner appealed his aggravated robbery and first-degree battery convictions to the Arkansas Court of Appeals.  For reversal, Petitioner, who is black, contended that the trial court erred by granting the State's challenge pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), because "counsel for the State did nothing more than point out that defense counsel had used his peremptory challenges against white males." The Petitioner also contended that the trial judge erred in skipping step two of *Batson*'s three-step procedure in evaluating the State's challenge to Petitioner's use of his peremptory challenges. The Arkansas Court of Appeals found that because Petitioner failed to make a specific argument regarding the way that the trial court handled the *Batson* objection, none of the issues raised in the appeal were preserved for appellate review.  Accordingly, the Court affirmed the judgment of the circuit court. *Long v. State*, 2004 Ark. App. LEXIS 936 (Dec. 15, 2004) (unpublished).

**B.  Rule 37 Proceedings.**

On February 8, 2005, Petitioner filed a petition for post-conviction relief in Pulaski County Circuit Court pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure.  He raised the following grounds for relief:

1.      The trial judge erred in granting the State's *Batson* challenge because "counsel for the State did nothing more than point out that defense counsel had used his peremptory challenges against white males";

2.      Trial counsel was ineffective for failing to object to the way in which the trial court handled the State's *Batson* challenge;

3.      Petitioner's right to due process was violated when his signature was obtained on a *Miranda*[1] statement while he was heavily sedated and incoherent due to multiple head injuries; and

4.      Trial counsel was ineffective for failing to argue that Petitioner's right to due process was violated when his signature was obtained on a *Miranda* statement while he was heavily sedated and incoherent due to multiple head injuries.

On March 8, 2005, Petitioner filed a motion to amend his Rule 37 petition to include the following additional grounds for relief:

1.      Appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for failing to object to the way in which the trial court handled the State's *Batson* challenge; and

2.      Appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for failing to argue that Petitioner's right to due process was violated when his signature was obtained on a *Miranda* statement when he was heavily sedated and incoherent due to multiple head injuries.

By an order entered on March 16, 2005, the circuit court denied Petitioner's Rule 37 petition and motion to amend his petition. Petitioner did not file a notice of appeal within thirty (30) days from the circuit court's order as required by Rule 2(a)(4) of the Arkansas Rules of Appellate Procedure - - Criminal.

On June 13, 2005, Petitioner tendered a motion for belated appeal to the

---

[1]   *Miranda v. Arizona*, 384 U.S. 436 (1966).

-4-

Arkansas Supreme Court.   In the motion, he alleged that he, in fact, mailed the notice of appeal within thirty days of March 16, 2005, the date that the Pulaski County Circuit Court denied his Rule 37 petition. He attached an affidavit to his motion, stating that he sent his notice of appeal to the circuit court for filing on March 26, 2005.   In a letter to Petitioner dated June 13, 2005, Sue Newberry, Criminal Justice Coordinator for the Supreme Court of Arkansas, informed Petitioner that his motion for belated appeal would be filed upon receipt of a certified copy of the following documents: his judgment of conviction, his Rule 37 petition, and the order denying the Rule 37 petition. In a letter to Petitioner dated July 11, 2005, Sue Newberry acknowledged receipt of documents from Petitioner and informed him that the documents were being returned to him because they were not certified by the Circuit Clerk of Pulaski County. She also advised Petitioner that when he had obtained the certified documents necessary to file the motion, he should mail them to "this office."

## II.   Prior Federal Habeas Proceedings.

On August 1, 2005, Petitioner filed a § 2254 petition in this Court.  As his sole ground for relief, Petitioner contended that his conviction was obtained by action of a petit jury which was unconstitutionally selected and impaneled.  In support of this claim, he alleged that the circuit judge erred in granting the State's *Batson* challenge "because counsel for the State did nothing more than point out that defense counsel had used his peremptory challenges against white males."  In a recommended disposition filed on September 29, 2005, the Magistrate Judge undersigned found that Petitioner's claim was procedurally barred because the Arkansas Court of Appeals disposed of the claim on independent and adequate state procedural grounds. The Magistrate Judge

recommended that Petitioner's petition be dismissed with prejudice. On October 25, 2005, Judge Holmes dismissed Petitioner's § 2254 petition without prejudice, finding that he had an available state remedy pursuant to Rule 2(e) of the Arkansas Rules of Appellate Procedure - - Criminal.  *Long v. Norris*, No. 5:05CV00222 JLH-JFF (E.D. Ark. Oct. 25, 2005). Under Rule 2(e), a petitioner may file a motion for belated appeal within eighteen months of the date of entry of an order denying Rule 37 relief.

### III.   Attempt to Exhaust State Remedy.

On November 16, 2005, Petitioner filed a motion in Pulaski County Circuit Court requesting certified copies of his judgment of conviction, his Rule 37 petition, and the order denying the Rule 37 petition. The circuit court has not ruled on the motion.

### CURRENT HABEAS PETITION

### I.   Grounds for Relief.

On September 15, 2006, Petitioner filed the pending § 2254 petition in this Court.[2]  He has raised the following grounds for relief:

1.    The prosecution denied him his right to due process of law by violating Rule 17.1 of Arkansas Rules of Criminal Procedure by failing to produce "the 'original' surveillance tape of the alleged robbery/battery of this case that would have proved from its footage the innocence of [Petitioner]";

2.    The trial judge erred in granting the State's *Batson* challenge to Petitioner's use of his peremptory challenges because "the State

---

[2]  A *pro se* prisoner's petition for writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court. *Nichols v. Bowersox*, 172 F.3d 1068, 1077 (8th Cir. 1999).  Petitioner signed his habeas petition on September 15, 2006.  In the petition, he declares under penalty of perjury that he placed his petition in the prison mailing system on September 15, 2006.  Under the circumstances, the Magistrate Judge finds that Petitioner filed his petition in this Court on September 15, 2006.

did nothing more than 'point out' that the defense counsel had used his peremptory challenges to that point on white males" and the trial judge skipped step two of the three-step procedure to be used when a party makes a *Batson* challenge;

3.      Trial counsel was ineffective for failing to object to the way that the trial court handled the State's *Batson* challenge;

4.      The prosecution erred in charging Petitioner as a habitual offender;

5.      Trial counsel was ineffective because he failed to object to Petitioner's being sentenced as a habitual offender;

6.      Trial counsel was ineffective for failing to challenge on cross-examination conflicting statements and testimony by the State's witnesses;

7.      Appellate counsel was ineffective for:

    a.      "not bringing the issues of this appeal to light as grounds for appeal"; and

    b.      choosing to "be a friend to the court rather than as an advocate for the [Petitioner], making only one 'unpreserved for review' argument"; and

8.      The trial judge violated his right to due process by allowing the State to withhold the original surveillance tape.

## II.  Prior Proposed Findings and Recommendations.

On January 26, 2007, the Magistrate Judge undersigned issued proposed findings and recommendations, recommending that Petitioner's habeas petition be dismissed with prejudice. See docket entry # 12.  The Petitioner subsequently filed objections to the findings and recommendations.  Finding that the complete state court record was not before the Court, Judge Holmes, in an order dated May 17, 2007, directed the Magistrate Judge to order the Respondent to supplement the record with the transcript of Petitioner's trial, his Rule 37 petition, his motion to amend his Rule 37

petition, and the circuit court's orders denying his Rule 37 petition and motion to amend. See docket entry # 15.  Judge Holmes also directed the Magistrate Judge to revise his proposed findings and recommendations as appropriate when Respondent supplemented the record. On May 17, 2007, the Magistrate Judge ordered the Respondent to file the documents within ten days. See docket entry # 17. The Respondent has complied with the order.

### III.  Revised Proposed Findings and Recommendations.

In accordance with Judge Holmes' order, the Magistrate Judge issues the following revised proposed findings and recommendations.

### A.  Statute of Limitations/Procedural Bar.

#### 1.  Introduction.

In response to Petitioner's habeas corpus petition, the Respondent asserts that the petition is barred by the one-year statute of limitations contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244(d)(1).   The Respondent also has raised the defense of procedural bar.  While the Respondent's response is not a model of clarity as to precisely which claims he is asserting are procedurally barred, the Court construed his response as contending that all of Petitioner's claims are procedurally barred and provided Petitioner an opportunity to explain why his claims were not procedurally barred.[3] See Order of October 10, 2006,

---

[3]  The Magistrate Judge notes that a federal court may raise *sua sponte* the issue of procedural bar. *King v. Kemna*, 266 F.3d 816, 821-22 (8th Cir. 2001); *Hardiman v. Reynolds*, 971 F.2d 500, 503-05 (10th Cir. 1992). *Cf. Day v. McDonough*, _ ___ U.S. ____,126 S. Ct. 1675,1682-1684 (2006) (noting that "the Courts of Appeal have unanimously held that, in appropriate circumstances, courts, on their own initiative, may raise a petitioner's procedural default" and holding that "districts courts

docket entry # 6.  On October 23, 2006, Petitioner filed a response to the Court's order.

See docket entry # 8.  In the interest of judicial economy, the Magistrate Judge declines

to address the Respondent's statute of limitations argument, a complicated issue, as

Petitioner's claims are easily resolved against him either on procedural bar grounds,

waiver grounds, or on the merits. *Cf. Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir.

2006) ("because neither the statute of limitations nor procedural default constitutes a

jurisdictional bar to our review (citation omitted), we shall, in the interest of judicial

economy, proceed to the merits of Trussell's petition"); *Barrett v. Acevedo*, 169 F.3d

1155, 1162 (8th Cir. 1999) ("judicial economy sometimes dictates reaching the merits

if the merits are easily resolvable against a petitioner while the procedural bar issues

are complicated").

**2.   Procedural Bar Analysis.**

        **a.   The Law.**

In considering a petition for federal habeas corpus relief, a district court usually

is precluded from considering any issue that a state court has already resolved on an

independent and adequate state law ground.  *Reagan v. Norris*, 279 F.3d 651, 656 (8th

Cir. 2001).  This includes cases in which the state court judgment turns on an

independent and adequate state procedural ground, such as a determination that a

claim is procedurally defaulted.  *Oxford v. Delo*, 59 F.3d 741, 744 (8th Cir. 1995);

*Reagan*, 279 F.3d at 656.  A district court also is ordinarily precluded from considering

---

are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state
prisoner's habeas petition").

any claim that a petitioner has failed to "fairly present" to the highest state court. *Wemark v. State*, 322 F.3d 1018, 1020-1021 (8th Cir. 2003); *Trevino v. Dahm*, 2 F.3d 829, 831 (8th Cir. 1993). "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark*, 322 F.3d at 1021 (citing *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)). "The federal legal theory or theories must plainly appear on the face of the petitioner's state court *briefs.*" *Jones v. Jerrison*, 20 F.3d 849, 854 (8th Cir. 1994).

Where the state court dismisses a habeas petitioner's claims on independent and adequate state law grounds or the petitioner has failed to fairly present his claims to the state court, the claims are procedurally defaulted, and a federal district court cannot consider them unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged constitutional violation, or actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 744, 750-51 (1991); *Prewitt v. Goeke*, 978 F.2d 1073, 1077 (8th Cir. 1992); *Wemark*, 322 F.3d at 1021-22; *Reagan*, 279 F.3d at 656. The existence of cause "must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). At a minimum, a petitioner must show that something "*external* to [him], something that cannot be fairly attributed to him," caused the procedural default. *Ivy v. Caspari*, 173 F.3d 1136, 1140 (8th Cir. 1999) (quoting *Coleman v. Thompson*, 501 U.S. at 753). For example, a showing that the factual or legal basis for the claim was not reasonably available to counsel, that some interference by officials made compliance impracticable, or that

counsel's performance was constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), would constitute factors external to the defense and cause for a procedural default. *Coleman v. Thompson*, 501 U.S. at 753.  Where a prisoner has no constitutional right to an attorney, such as in state post-conviction proceedings, any attorney error that led to default cannot constitute cause to excuse the default in federal court. *Coleman v. Thompson*, 501 U.S. at 757; *Sweet v. Delo*, 125 F.3d 1144, 1151 (8th Cir. 1997).  A claim of ineffective assistance of counsel must be presented in state court as an independent claim before it may be used to establish cause for a procedural default in a habeas corpus proceeding. *Taylor v. Bowersox*, 329 F.3d 963, 971 (8th Cir. 2003); *Frasier v. Maschner*, 304 F.3d 815, 817 (8th Cir. 2002).

A narrow exception to the cause and prejudice standard exists where the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 496. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo*,  513 U.S. 298, 327 (1995); *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001); *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995).  To be credible, "a substantial claim that constitutional error has caused the conviction of an innocent person" must be supported with "new reliable evidence - - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial." *Schlup v. Delo*, 513 at 324; *House v. Bell*, _____ U.S. ____, 126 S. Ct. 2064, 2078 (2006).  "Evidence is only 'new' if it was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.'"

*Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005) (quoting *Amrine*, 238 F.3d at 1029).

**b. Application.**

### i. Claims 1, 4, and 8.

The Magistrate Judge finds that Claim 1 (the prosecution denied Petitioner his right to due process of law by violating Ark. R. Crim. P.17.1), Claim 4 (the prosecution erred in charging Petitioner as a habitual offender), and Claim 8 (the trial judge violated Petitioner's right to due process by allowing the State to withhold the original surveillance tape) are procedurally defaulted because Petitioner did not present the claims in state court. The appropriate state-court remedy for the claims was direct appeal. Neither Rule 37 nor a belated appeal from the circuit court's order denying Petitioner Rule 37 relief provided an available, non-futile remedy to raise Claims 1, 4, and 8. "Generally, Rule 37 does not provide a remedy when an issue could have been raised in the trial or argued on [direct] appeal." *Howard v. State*, 2006 Ark. LEXIS 417 at * 7 (Ark. June 29, 2006); *Camargo v. State*, 346 Ark. 118, 123, 55 S.W.3d 255, 259 (2001); *Kemp v. State*, 348 Ark. 750, 765, 74 S.W.3d 224, 232 (2002); *Nooner v. State*, 339 Ark. 253, 257, 4 S.W.3d 497, 499 (1999). "Stated another way, it is not appropriate to raise trial errors, including constitutional errors, for the first time in a Rule 37 proceeding." *Howard*, 2006 Ark. LEXIS 417 at * 7. "However, there is an exception to this general rule for errors that are so fundamental as to render the judgment of conviction void and subject to collateral attack." *Id.*; *Kemp*, 348 Ark. at 765, 74 S.W.3d at 232. "A ground sufficient to void a conviction must be one so basic that it renders

the judgment a complete nullity, for example, a judgment obtained in a court lacking jurisdiction to try the accused, or a conviction obtained in violation of an accused's rights against double jeopardy." *Jeffers v. State*, 301 Ark. 590, 591, 786 S.W.2d 114 (1990); *Howard*, 2006 Ark. LEXIS 417 at * 7; *Rowbottom v. State*, 341 Ark. 33, 37,13 S.W.3d 904, 906 (2000). Claims 1, 4, and 8 clearly do not raise grounds so basic as to render the judgment a complete nullity. *Cf.  Howard*, 2006 Ark. LEXIS 417 at ** 7-8 (an argument that the defendant's right to due process was violated by the prosecutor's misconduct in knowingly presenting false testimony is not a ground so basic that it renders the judgment a complete nullity); *Camargo*, 346 Ark. at 123, 55 S.W.3d at 259 (the issue of whether the trial court erred in denying the petitioner's motion to strike jurors for cause is not so fundamental as to render the judgment void and open to collateral attack); *Rowbottom*, 341 Ark. at 40-41,13 S.W.3d at 908-09 (an argument that the prosecution committed a discovery violation by failing to disclose its intention to introduce certain evidence is waived if not raised at trial or on direct appeal); *Cook v. State*, 361 Ark. 91, 105, 204 S.W.3d 532, 540 (2005) (a claim pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), that the trial court erred in failing to find that the petitioner was denied due process because the State failed to disclose certain evidence, is not cognizable under Rule 37); *Oliver v. State*, 323 Ark. 743, 748, 918 S.W.2d 690, 692 (1996) (the issue of denial of counsel at a criminal trial must be raised on direct appeal or is waived); *Arnold v. State*, 2004 Ark. LEXIS 479 at * 7 (Ark. Sept. 16, 2004) (claims that the State withheld exculpatory evidence in violation of *Brady v. Maryland* and that the prosecution engaged in misconduct by concealing such evidence

are not cognizable in a Rule 37 proceeding as "an appellant cannot raise claims now that should have been raised below and on direct appeal"); *Jones v. State*, 1987 Ark. LEXIS 2095 at **1-2 (Ark. June 29, 1987) (an allegation that the prosecution used peremptory challenges to strike black jurors is not a ground so basic that it renders the judgment a complete nullity)*; Wilson v. State*, 2005 Ark. LEXIS 236 at * 15 (Ark. April 14, 2005) (an argument that the prosecution engaged in misconduct is not cognizable in a Rule 37 proceeding as it "should have been raised at trial or argued on appeal").

**ii.  Claims 5, 6, and 7(b).**

The Magistrate Judge finds that the appropriate state remedy for Claims  5, 6, and 7(b), in which Petitioner claims that counsel was ineffective in several ways, was a post-conviction petition pursuant to Rule 37.  Petitioner did not raise these claims in his Rule 37 petition or in his motion to amend his Rule 37 petition.  Accordingly, Claims 5, 6, and 7(b) are procedurally defaulted.

**iii.  Claim 7(a).**

In Claim 7(a), Petitioner contends that appellate counsel was ineffective for "not bringing the issues of this appeal to light as grounds for appeal."  Petitioner only raised two claims in state court regarding appellate counsel's ineffectiveness: (1) appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for failing to argue that Petitioner's right to due process was violated when his signature was obtained on a *Miranda* statement when he was heavily sedated and incoherent due to multiple head injuries; and (2) appellate counsel was ineffective for failing to argue on direct appeal that  trial counsel was ineffective for failing to object to the way in which the trial court handled the State's *Batson* challenge.  Petitioner raised

both of these claims in his motion to amend his Rule 37 petition, which the circuit court denied, finding that Petitioner "has failed to demonstrate that he was prejudiced by his counsel's alleged errors, and thus, that he is entitled to Rule 37 relief."  In his federal habeas petition, Petitioner has not raised the issue of trial counsel's ineffectiveness in failing to argue that Petitioner's right to due process was violated when his signature was obtained on a *Miranda* statement when he was heavily sedated and incoherent due to multiple head injuries. The Magistrate Judge finds that all of Petitioner's claims in Claim 7(a), other than his claim that appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for failing to object to the way that the trial court handled the State's *Batson* challenge, are procedurally defaulted.

In the interest of judicial economy, the Magistrate Judge will address the following claims without regard to any "procedural default" by Petitioner: Claim 2 (the trial judge erred in granting the State's *Batson* challenge), Claim 3 (trial counsel was ineffective for failing to object to the way that the trial court handled the State's *Batson* challenge), and Petitioner's claim in Claim 7(a) that appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for failing to object to the way that the trial court handled the State's *Batson* challenge.  The Magistrate Judge notes that Petitioner raised his claim that the trial judge erred in granting the State's *Batson* challenge in his prior habeas petition, which the Court dismissed without prejudice so that he could exhaust his state remedy, *i.e.*, a motion for belated appeal from the circuit court's order denying Rule 37 relief.  However, it is appears that such a remedy is futile.  Petitioner has attempted unsuccessfully to obtain the certified documents necessary to file a belated appeal.  He filed a motion requesting the

documents on November 16, 2005. The motion is still pending.  Even if Petitioner tendered the necessary documents to the Arkansas Supreme Court, it is highly unlikely that the Court would entertain his claim that the trial judge erred in granting the State's *Batson* challenge. On direct appeal, the Arkansas Court of Appeals addressed this claim, holding that the claim was procedurally barred.  Rule 37 does not provide an opportunity to reargue points that were "settled" or "passed upon" on direct appeal. *Kemp*, 348 Ark. at 765-66, 74 S.W.3d at 232; *Howard*, 2006 Ark. LEXIS 417 at * 19. Also, the circuit court, in denying Petitioner's Rule 37 petition, did not rule on Petitioner's claim that the trial judge erred in granting the State's *Batson* challenge. Where an appellant fails to obtain a ruling on a claim raised in a Rule 37 petition, the claim is procedurally barred and the Arkansas Supreme Court will not consider it in an appeal from the denial of Rule 37 relief.  *Fisher v. State*, ____ Ark. ____, 217 S.W.3d 117, 123 (2005); *Howard*, 2006 Ark. LEXIS 417 at * 10.

**iv.  Cause and Prejudice.**

Petitioner has procedurally defaulted Claims 1, 4, 5, 6, 7(b) and 8 and all claims in Claim 7(a), other than his claim that appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for failing to object to the way that the trial court handled the State's *Batson* challenge.  Petitioner asserts that the reason he did not raise his procedurally defaulted claims in state court was his ignorance of the law. A petitioner's ignorance of the law does not suffice as cause for his procedural default. *Williams v. Lockhart*, 873 F.2d 1129, 1130 (8th Cir. 1989). Petitioner also alleges that the reason he did not raise his procedurally defaulted claims in state court was appellate counsel's ineffective assistance on direct appeal.  Petitioner

did not raise the issue of appellate counsel's ineffectiveness in failing to raise his procedurally defaulted claims on direct appeal as an independent claim in state court pursuant to Rule 37. Accordingly, appellate counsel's ineffectiveness in failing to raise these claims on direct appeal cannot constitute cause for his procedural default. *Taylor*, 329 F.3d at 971. Furthermore, with respect to Petitioner's procedurally defaulted claims concerning appellate counsel's ineffectiveness on direct appeal (all claims in Claim 7 other than the claim that appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for failing to object to the way that the trial court handled the State's *Batson* challenge), appellate counsel was not ineffective on direct appeal for failing to raise claims concerning his own ineffectiveness on direct appeal. Finally, with respect to Claim 5 (trial counsel was ineffective because he failed to object to Petitioner's being sentenced as a habitual offender) and Claim 6 (trial counsel was ineffective for failing to challenge on cross-examination conflicting statements and testimony by the State's witnesses), appellate counsel was not ineffective for failing to raise the claims on direct appeal because the Arkansas Court of Appeals would not have considered the claims if counsel had raised them. It is well settled that Arkansas appellate courts "will not consider ineffective assistance of counsel as a point on direct appeal unless the issue has been considered by the trial court." *Ratchford v. State*, 357 Ark. 27, 31, 159 S.W.3d 304, 306-07 (2004); *Alexander v. State*, 55 Ark. App. 148, 154, 934 S.W.2d 927, 930 (1996) (citing *Edwards v. State*, 321 Ark. 610, 906 S.W.2d 310 (1995)). Prior to filing his direct appeal, Petitioner did not present Claims 5 and 6 to the trial court, and the trial court did not consider the claims.

In conclusion, the Magistrate Judge finds that Petitioner has not shown cause

for his procedural default. The Magistrate Judge further finds that he has not shown actual prejudice as a result of a constitutional violation.

**v.  Actual Innocence.**

To excuse his procedural default, Petitioner asserts that he is actually innocent of "a crime."  To meet the actual innocence exception, a petitioner must submit new reliable evidence of actual innocence and demonstrate that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Schlup v. Delo*, 513 U.S. at 324, 327. Petitioner has not submitted new reliable evidence of actual innocence showing that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.  Therefore, he has not met the actual innocence exception.

Petitioner also contends he is actually innocent of his non-capital sentences because he can prove that he is not a habitual offender as charged by the State. Petitioner's sentences were enhanced based on his classification as a habitual offender with more than one but less than four prior felony convictions. During the sentencing phase of Petitioner's trial, the State introduced a judgment of conviction showing that Petitioner had been convicted of two prior felony offenses.  Petitioner has not submitted evidence demonstrating that he is not a habitual offender and that he is, therefore, actually innocent of his non-capital sentences. In addition, a petitioner's actual innocence of his noncapital sentence does not fall within the scope of the actual innocence exception. *See Embrey v. Hershberger*, 131 F.3d 739, 740-41 (8th Cir. 1987); *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001). *See also Reid v. State of Oklahoma*, 101 F.3d 628, 630 (10th Cir. 1996) (because a defendant cannot be

actually innocent of a noncapital sentence, his "challenge to recidivist enhancement does not fall within the potential scope of the miscarriage of justice exception"). *Cf. Hope v. United States*, 108 F.3d 119, 120 (7th Cir. 1997) (determining that the actual innocence exception to noncapital sentencing proceedings did not survive the enactment of the AEDPA).

**vi. Summary.**

In summary, the Magistrate Judge finds that the following claims are procedurally barred: Claims 1, 4, 5, 6, 7(b), and 8 and all claims in Claim 7(a), other than the claim that appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for failing to object to the way that the trial court handled the State's *Batson* challenge.

**B.   Merits: Claims 2, 3, and 7(a).**

**1.   Claim 2: Error in granting the State's *Batson* challenge.**

**a.  Introduction.**

In Claim 2, Petitioner contends that the trial judge erred in granting the State's *Batson* challenge to his use of peremptory challenges because "the State did nothing more than 'point out' that the defense counsel had used his peremptory challenges to that point on white males" and the trial judge skipped step two of the three-step procedure to be used when a party makes a *Batson* challenge.  Under the AEDPA, a federal court is required to give deference to state court decisions adjudicating a petitioner's claim on the merits. 28 U.S.C. § 2254(d).  In his Rule 37 petition, Petitioner raised the argument that the trial judge erred in granting the State's *Batson* challenge.

However, the circuit court, in denying Petitioner's Rule 37 petition, did not adjudicate the claim. Under the circumstances, the Magistrate Judge finds that AEDPA's deferential standard does not apply to this Court's resolution of Claim 2.

During *voir dire* at Petitioner's trial, the following exchange occurred between defense counsel, the deputy prosecuting attorney, and the trial judge:

> Prosecution: Your Honor, looking at the defense strikes, it looks like they're striking Mr. Lounsberry and Mr. Starr on the back row. At this point, I would note that every single strike the defense has made at this point has been a white male. I think enough of a pattern has been shown. We'd like to make a *Batson* challenge of the strikes at this time and ask that a . . . legal reason for the strikes be shown at this time by defense.

> Defense: Likewise, your Honor, the prosecution has exercised four strikes, three of those against blacks. There's eight blacks on the panel. They've struck almost fifty percent of the blacks on the jury panel as a whole. There are still plenty of white males in the audience and on the jury.

> The Court: What about it?

> Prosecution: Your Honor, I don't think they've shown a prima facie case in that we've kept blacks on this panel, Mr. Daniels and Mr. McDowell specifically. I don't think at this point I have to articulate any non-biased reason for the strikes I've made because I don't think any pattern was shown. But every single strike for the defense has been a white male.

> The Court: With respect to Ophelia Johnson, she specifically indicated a hesitation in using judgment against people.

> Prosecution: That's correct.

> The Court: With respect to Hazel Bragg, she indicated she had something to do tomorrow that was pressing.

> Prosecution: Correct.

> The Court: I don't know anything about Mr. Hornes though on this case. What is the State's reason for striking him?

> Prosecution: Your Honor, he said he'd been up to Ninth Street Shell and had prior contact perhaps with Mr. Green. We saw Mr. Green was pretrial

{sic}. I don't know the nature of the contact, didn't want to explore it. But out of an abundance of caution, I exercised a peremptory strike against him.

The Court: He indicated no bias, though. We'll go on with the jurors and also grant what the State has said with respect to defendant's use of strikes. They have been used against all white males. So, we'll keep Mr. Lounsberry and Mr. Starr and Mr. Hornes.

Trial Transcript, pp. 107-109.

The deputy prosecutor and defense counsel subsequently pronounced the panel to be "good" upon inquiry by the circuit judge. Tr. 109-110.  The jury, which included the two white males whom Petitioner had struck, Mr. Lounsberry and Mr. Starr, were sworn to try the case. Tr. 110.

**b.  The Law.**

The Equal Protection Clause forbids both the prosecution and the defense from engaging in purposeful discrimination on the basis of race in exercising peremptory challenges. *Batson v. Kentucky*, 476 U.S. at 89-100 (prosecution); *Georgia v. McCollum*, 505 U.S. 42, 46-55 (1992) (defense). The prosecution's objection to the defendant's discriminatory use of peremptory challenges is sometimes referred to as "reverse *Batson* motion" or "reverse *Batson* challenge."  *Overton v. Newton*, 295 F.3d 270, 273 (2d Cir. 2002) (reverse *Batson* motion); *Youngblood v. Brown*, 2006 U.S. Dist. LEXIS 87527 at * 8 (S.D.N.Y. Dec. 1, 2006) (reverse *Batson* challenge). The prohibition against exercising peremptory challenges on the basis of race applies whether the peremptory challenge is against a white or black prospective juror. *See, e.g.*, *United States v. Parham*, 16 F.3d 844, 847 (8th Cir. 1994) (black prospective juror); *United States v. Brown*, 243 F.3d 1293, 1295-97 (11th Cir. 2001) (white prospective juror).

In addition, a defendant's claim that the prosecution engaged in purposeful discrimination on the basis of race in the exercise of peremptory challenges is not precluded by the fact that the defendant's race differs from that of the excluded venirepersons. *Powers v. Ohio*, 499 U.S. 400, 402-09 (1991); *Tankleff v. Senkowski*, 135 F.3d 235, 240 (2d Cir. 1998).

In *Batson v. Kentucky*, the United States Supreme Court established a three-step burden-shifting framework for determining whether a peremptory challenge is race-based.[4]  First, the opponent of the peremptory challenge must establish a *prima facie* case showing that the challenge is racially discriminatory. *Batson* v. *Kentucky*, 476 U.S. at 93-97; *Moran v. Clark*, 443 F.3d 646, 651 (8th Cir. 2006)*; Hall v. Luebbers*, 341 F.3d 706, 713 (8th Cir. 2003); *McKinney*, 326 F.3d at 97. To establish a *prima facie* case, the opponent of a challenge "must establish the voir dire supports an inference of discriminatory purpose in the . . . exclusion of a juror through a race-based peremptory challenge." *Hall*, 341 F.3d at 713 (citing *Powers v. Ohio*, 499 U.S. at 411-16).  Second, if a *prima facie* showing is made, the burden of production shifts to the proponent of the peremptory challenge to come forward with a race-neutral explanation for removing the juror in question. *Purkett v. Elem*, 514 U.S. 765, 767 (1995); *Batson v. Kentucky*, 476 U.S. at 97; *Moran*, 443 F.3d at 651; *Hall*, 341 F.3d at 713. "If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination." *Purkett* v. Elem, 514 U.S. at 767;

---

[4] Although *Batson* involved only a prosecutor's peremptory challenges, the *Batson* framework applies to peremptory challenges by a criminal defendant. *McKinney v. Artuz*, 326 F.3d 87, 97-98 (2d Cir. 2003) (citing *Georgia v. McCollum*, 505 U.S. at 46).

*Hall*, 341 F.3d at 713.  "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem*, 514 U.S. at 768; *Moran*, 443 F.3d at 652.  If the trial court finds that the opponent of a peremptory challenge has proven purposeful racial discrimination, the court may "discharge the venire and select a new jury from a panel not previously associated with the case,  or . . . disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire." *Batson v. Kentucky*, 476 U.S. at 99-100 n. 24 (citations omitted). *See also Youngblood*, 2006 U.S. Dist. LEXIS 87527 at * 13 (reseating impermissibly challenged jurors is an appropriate remedy after a reverse *Batson* violation).

The Equal Protection Clause also prohibits peremptory challenges on the basis of gender. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 130-146 (1994); *United States v. Clark*, 409 F.3d 1039, 1043 (8th Cir. 2005). The three-step burden-shifting framework applies to a claim by an opponent of a peremptory challenge that the proponent of the challenge exercised the challenge on the basis of gender. *Clark*, 409 F.3d at 1043; *Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 939-40 (7th Cir. 2001).

The Second Circuit has held that where a defendant does not object to the prosecution's racially discriminatory use of peremptory challenges until after completion of jury selection, he "waives the objection" and forfeits his right to later bring a *Batson* claim in a federal habeas corpus petition. *McCrory v. Henderson*, 82 F.3d 1243, 1247-50 (2d Cir. 1996). In *Wilkerson v. Collins*, 950 F.2d 1054 (5th Cir. 1992), the Fifth Circuit held that the defendant's failure to timely object at trial to the prosecutor's

racially discriminatory use of peremptory challenges was a "constitutional bar" to a *Batson* challenge raised in a federal habeas corpus petition. *Id.* at 1063. These holdings are not based upon the "procedural default" doctrine but rather on the doctrines of waiver (*McCrory*) and "constitutional bar" (*Wilkerson*).  It is important to note that the Eighth Circuit has held that where a defendant first raises a race-based *Batson* objection after the trial has concluded, he waives the right to argue on direct appeal that the district court erred in failing to require the government to provide reasons for exercising peremptory strikes against black members of the venire.  *United States v. Dobynes*, 905 F.2d 1192, 1196-97 (8th Cir. 1999). *See also Clark*, 409 F.3d at 1043 (where a defendant does not raise a gender-based *Batson* challenge until after the venire has been dismissed, he waives the right to argue on direct appeal that the district court improperly rejected his *Batson* challenge). Also, the Third Circuit has held that where a defendant fails to object at trial to the trial court's denial of some of his peremptory strikes, he waives any objection to the denial. *Government of the Virgin Islands v. Bradshaw*, 569 F.2d 777, 781 (3d Cir. 1978).

### c. Application.

#### i. Waiver.

Petitioner does not challenge the prosecution's use of its peremptory strikes, but rather asserts that the trial judge erred in granting the State's *Batson* challenge to his use of peremptory challenges because "the State did nothing more than 'point out' that the defense counsel had used his peremptory challenges to that point on white males" and the trial judge skipped step two of *Batson*'s three-step procedure. The Magistrate

Judge finds that the waiver doctrine articulated in *McCrory* and the "constitutional bar" doctrine articulated in *Wilkerson* applies equally where a petitioner, as here, argues in his federal habeas petition that the trial judge erred in granting the State's *Batson* challenge. In the case at bar, the trial judge, by granting the State's *Batson* challenge, disallowed Petitioner two of his peremptory strikes of two white males, Mr. Lounsberry and Mr. Starr, and kept them on the venire.  At the conclusion of *voir dire*, defense counsel pronounced the jury "good." The jury included Mr. Lounsberry and Mr. Starr. Petitioner did not object at trial to the trial court's granting the State's *Batson* challenge, disallowing his two peremptory strikes, or keeping the two jurors on the venire or jury. Under the circumstances, the Magistrate Judge finds that Petitioner waived any objection to the trial court's granting the State's *Batson* challenge and that he cannot obtain federal habeas corpus relief on his claim that the trial court erred in granting the State's *Batson* challenge.

**ii.  Merits.**

The Magistrate Judge further finds that even if habeas corpus relief on his claim were not precluded because of waiver, Petitioner would not be entitled to relief.  First, the mere fact that the trial court disallowed Petitioner two of his peremptory challenges to white males does not violate the Constitution. The United States Supreme Court has "long recognized that peremptory challenges are not of constitutional dimension." *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) (citing *Gray v. Mississippi*, 481 U.S. 648, 663 (1987)); *United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000).  They are simply "a means to achieve the end of an impartial jury." *Ross v. Oklahoma*, 487 U.S. at 88.

"So long as the jury that sits is impartial, the fact that a defendant had to use a peremptory challenge to achieve that result does not mean that the Sixth Amendment was violated." *Id.; Ramsey v. Bowersox*, 149 F.3d 749, 758 (8th Cir. 1988) ("Loss of a peremptory challenge does not violate the constitutional right to a fair jury."); *Cox v. Norris*, 133 F.3d 565, 572 (8th Cir. 1997) (same)*; Johnson v. Gibson*, 254 F.3d 1155, 1160 (10th Cir. 2001) (the loss of a "peremptory challenge alone is insufficient to establish a constitutional deprivation").  Petitioner does not allege, nor has he submitted any evidence indicating, that the jury was not impartial or that the two white males whom Petitioner struck, but who were reinstated to the venire and seated on the jury, were not impartial.  Accordingly, any claim that the trial court erred in disallowing Petitioner two peremptory challenges or that he lost peremptory challenges is not cognizable on federal habeas corpus review. *Ramirez v. Poole*, 2005 U.S. Dist. LEXIS 39317 at ** 7-8 (E.D.N.Y. May 9, 2005).

It is important to note that prior to the adoption of the AEDPA, federal district courts commonly held evidentiary hearings so that a petitioner could develop the factual basis for his claims. The AEDPA sharply limits a federal district court's power to conduct an evidentiary hearing. 28 U.S.C. § 2254(e)(2); *Perry v. Kemna*, 356 F.3d 880, 889 (8th Cir. 2004). Where a petitioner "has failed to develop the factual basis of a claim in State court proceedings," a district court cannot hold an evidentiary hearing unless the petitioner shows that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the [petitioner] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B); *Perry*, 356 F.3d at 889.  He also must show that

his claim relies on either "(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously  unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A). Petitioner has not met the requirements of § 2254(e)(2).

The Magistrate Judge further finds that the fact that the two white males whom Petitioner struck were seated on the jury does not violate his right to equal protection. "[A] defendant has no right to a 'petit jury composed in whole or in part of persons of his own race.'" *Batson v. Kentucky*, 476 U.S. at 85 (quoting *Strauder v. West Virginia*, 100 U.S. 303, 305 n. 5 (1880)). Under *Batson* and its progeny, it is purposeful discrimination on the basis of race or gender that violates the Equal Protection Clause. Petitioner has not alleged, nor is there any evidence in the record indicating, that the State engaged in discrimination in challenging Petitioner's counsel's use of all of his peremptory challenges against white males.

Petitioner contends that the trial judge erred in granting the State's *Batson* challenge because the trial judge skipped step two of the three-step procedure to be used when a party makes a *Batson* challenge. Once the opponent of a peremptory challenge has established a *prima facie* case of discrimination, the proponent of the challenge, at step two, must articulate a race-neutral explanation for removing the juror in question. The primary purpose of the *"Batson* doctrine" and *Batson*'s three-step procedure is to "prevent invidious discrimination in jury selection . . . . " *See Durant v. Strack*, 151 F. Supp. 2d 226, 237 (E.D.N.Y. 2001); *Issac v. Greiner*, 2004 U.S. Dist. LEXIS 19792 at * 10 (S.D.N.Y. Sept. 29, 2004) ("the protection offered by the *Batson*

three-step analysis is needed because 'racial discrimination in the selection of jurors casts doubts on the integrity of the judicial process'"), quoting *Powers v. Ohio*, 499 U.S. at 411.   Consistent with this purpose, the Eighth Circuit has reversed the denial of habeas relief where the state trial court failed to fulfill its obligation to evaluate the merits of the criminal defendant's *Batson* challenge by refusing to acknowledge or consider the racial composition of the jury pool, demanded that the defendant meet a burden of proof which had no support in United States Supreme Court precedent, and initially failed to afford defense counsel an opportunity to respond to the prosecutor's racially-neutral reasons for striking the prospective jurors. *Smulls v. Roper*, 467 F.3d 1108, 1114-15 (8th Cir. 2006).  In *Smulls v. Roper*, the Eighth remanded the case with instructions to the district court, in its discretion, to reconstruct the circumstances surrounding the petitioner's *Batson* challenge to determine whether the prosecutor's strike was racially motivated, or if the passage of time or other circumstances made such a task impossible or unsatisfactory, to grant the writ.  *Id.* at 1115-16.   Federal circuit courts also have reversed or vacated the denial of habeas relief where the state trial court failed to fulfill "its obligations under the third step of the *Batson* analysis - to adjudicate the credibility of the [prosecution's] race-neutral explanations for the challenged peremptory strikes and make an ultimate ruling as to discrimination," *Galarza v. Keane*, 252 F.3d 630, 639-41 (2d Cir. 2001), or where the state trial court failed to fulfill its affirmative duty at the third *Batson* step to determine whether the defendant had established purposeful discrimination by the prosecution in exercising peremptory challenges, *Lewis v. Lewis*, 321 F.3d 824, 832 (9th Cir. 2003).

The Magistrate Judge finds that granting habeas relief to Petitioner on the basis

that the trial judge did not ask Petitioner's counsel whether he had a race-neutral or gender-neutral explanation for use of all his peremptory strikes against white males would not serve to cure any discrimination by the prosecution during jury selection. Petitioner does not allege, nor is there any evidence in the record tending to indicate, that the prosecution engaged in discrimination based on race or gender in making its *Batson* challenge to Petitioner's counsel's use of his peremptory challenges against white male prospective jurors. It was certainly reasonable for the prosecution to challenge Petitioner's counsel's use of all of his peremptory strikes against white males, which supported an inference of discriminatory purpose on Petitioner's counsel's part and established a *prima facie* case under *Batson*. *Cf. Green v. Travis*, 414 F.3d 288, 299 (2d Cir. 2005) (a prosecutor's use of 100% of his peremptory challenges to remove black and Hispanic jurors establishes a *prima facie* case of discrimination); *Moran*, 443 F.3d at 651 (a defendant's use of all of his for cause and peremptory challenges against all four black members of the venire "raises an inference of discriminatory purpose" and establishes a *prima facie* case under *Batson*); *United States v. DeGross*, 960 F.2d 1433, 1442 (9th Cir. 1990) (holding that where the defendant used seven of her eight peremptory challenges against males and at the time she challenged another male juror, ten women and two men were seated in the jury box and only one man remained in the venire, the prosecutor established a *prima facie* case of gender discrimination). Petitioner has not offered a race-neutral or gender-neutral explanation for his counsel's use of all his peremptory strikes against white males on the venire. Furthermore, he does not allege that his counsel did not engage in purposeful discrimination on the basis of race and gender in striking the white males from the jury

panel. The Magistrate Judge finds that Petitioner is not entitled to habeas relief because of any error by the trial judge in skipping step two of *Batson*'s three-step procedure or in sustaining the State's reverse *Batson* challenge. *Cf. Reyes v. Greiner*, 340 F. Supp. 2d 245, 275 (E.D.N.Y. 2004) (a trial court's error in sustaining the prosecution's objection to the defendant's exercise of peremptory challenges "does not even implicate the Equal Protection Clause"), *aff'd*, 150 Fed. Appx. 77, 2005 U.S. App. LEXIS 21758 (2d Cir. Oct. 4, 2005).

## 2.  Claim 3: Trial counsel's failure to object to the way that the trial court handled the State's *Batson* challenge.

In Claim 3, Petitioner contends that trial counsel was ineffective for failing to object to the way that the trial court handled the State's *Batson* challenge.  The state circuit court adjudicated this claim on the merits in denying Petitioner's Rule 37 petition. This Court's power to review state court decisions in habeas corpus cases is restricted to the "limited and deferential review" mandated by the AEDPA.  *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004) (quoting *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004)).  Under the AEDPA, if a claim has been adjudicated on the merits in state court, a federal court shall not grant habeas relief unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Liggins v. Burger*, 422 F.3d 642, 646-647 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1359 (2006); *Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004);

*Johnston v. Luebbers*, 288 F.3d 1048, 1051 (8th Cir. 2002).

"A state court decision is 'contrary to' clearly established federal law if the rule applied by the state court directly contradicts Supreme Court precedent or if the state court reached a result opposite a result reached by the Supreme Court on 'materially indistinguishable' facts." *Johnston*, 288 F.3d at 1051 (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). "A state court decision involves an unreasonable application of Supreme Court precedent if it correctly identifies the governing legal rules but unreasonably applies them to the facts of the prisoner's case." *Ford v. Bowersox*, 256 F.3d 783, 786 (8th Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. at 407). "The focus under the unreasonable application test is 'whether the state court's application of clearly established federal law is objectively unreasonable.'" *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "An incorrect decision is not necessarily unreasonable, and [a district court] may not grant a writ of habeas corpus unless the state court decision is both wrong and unreasonable." *Palmer v. Clarke*, 408 F.3d 423, 429 (8th Cir. 2005); *Colvin v. Taylor*, 324 F.3d 583, 587 (8th Cir. 2003). "A reasonable application of established federal law 'does not require citation of [United States Supreme Court] cases-indeed, it does not even require awareness of [these cases], so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)). "Finally, a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown by clear and convincing evidence that the state court's presumptively correct factual

findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th

Cir. 2003). The provisions of § 2254(d) mandating deference to state court

adjudications on the merits apply to decisions of both state trial courts and state

appellate courts. *Newton v. Kemna*, 354 F.3d 776, 782-783 (8th Cir. 2004) (state trial

court decisions); *Weaver v. Bowersox*, 241 F.3d 1024, 1030-1032 (8th Cir. 2001) (state

trial court and state appellate court decisions); *Ellis v. Norris*, 232 F.3d 619, 622-623

(8th Cir. 2000) (state appellate court decisions). The "summary nature" of a state court

adjudication "does not affect the standard of review" mandated by § 2254(d). *James

v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999).

In adjudicating Petitioner's claim that trial counsel was ineffective for failing to

object to the way that the trial court handled the State's *Batson* challenge, the circuit

court found as follows:

> Defendant alleges that his trial counsel was ineffective for not objecting to the way that the Court handled the State's *Batson* objection, and thus, preserving the issue for appellate review.  At trial, the State made a *Batson* objection contending that Defendant was using his peremptory strikes to exclude white males as jurors.  Defendant responded that the State was using its peremptory strikes to exclude black males as jurors. The State presented its racially neutral explanation for striking certain jurors. Defendant, however, did not provide the Court with any explanation for its strikes. Thereafter, the Court granted the State's Batson objection finding that Defendant has used his strikes against all white males.  With regard to the above allegation, Defendant has failed to present any convincing argument showing that he was prejudiced by his counsel's alleged error or showing that had his trial counsel preserved the issue of the Court's handling of the State's Batson objection, he would have prevailed on appeal, and thus, would have been entitled to Rule 37 relief.  Ineffective assistance of counsel cannot be established merely by showing that an error was made by counsel or by revealing that a failure to object prevented an issue from being addressed on appeal (citation omitted).

> In *Strickland v. Washington*, the United States Supreme Court adopted a two-

part standard for evaluating claims of ineffective assistance of counsel. Under this standard, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-688.  He must also show prejudice, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "To maintain a claim for ineffective assistance of counsel, [a petitioner] must plead facts sufficient to show both that his counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by this deficient performance." *Voytik v. United States*, 778 F.2d 1306, 1310 (8th Cir. 1985).

Petitioner has not alleged facts tending to show that he was prejudiced by counsel's failure to object to the way that the trial court handled the State's *Batson* challenge.  If Petitioner's counsel had objected during *voir dire* on the basis that the trial judge skipped step two of *Batson*'s three-step procedure, the trial judge likely would asked counsel to provide a race-neutral and gender-neutral explanation for his peremptory challenges. The only circumstance that might have changed the trial judge's ruling on the State's *Batson* challenge was if  Petitioner's counsel had provided a credible race-neutral and gender-neutral reason for his peremptory challenges. Petitioner has not provided a race-neutral or gender-neutral explanation for his counsel's using all his peremptory challenges to strike white males.  Therefore, there is no basis upon which this Court can find that there is a reasonable probability that, if counsel had objected on the basis that the trial judge skipped step two of *Batson*'s three-step procedure, the trial judge would have denied the State's *Batson* challenge. Furthermore, in considering whether a petitioner has met the prejudice prong of

*Strickland*, the determinative issue is not whether there is a reasonable probability that, if defense counsel had objected to the way that the trial judge handled the State's *Batson* challenge, the trial judge would have denied or granted the State's *Batson* challenge, but instead whether the outcome of Petitioner's trial would have been different. *Cf. Young v. Bowersox*, 161 F.3d 1159, 1161 (8th Cir. 1998) (where a petitioner alleges that counsel was ineffective for failing to object to the prosecutor's use of peremptory challenges to exclude black persons from the jury, he must show a reasonable probability that the result of his trial would have been different); *Wright v. Nix*, 928 F.2d 270, 274 (8th Cir. 1991) (Arnold, J., concurring) (where a petitioner alleges that trial counsel was ineffective for failing to object to the prosecution's striking two non-white jurors from the venire, he must show that there is a reasonable probability, but for counsel's failure to object, the result of his trial would have been different); *Ruff v. Armontrout*, 77 F.3d 265, 268 (8th Cir. 1996) (to prevail on a claim that ineffective assistance of counsel was the cause for the petitioner's omission of his *Batson* argument at trial, he must show that "his counsel's failure to raise the *Batson* claim resulted in prejudice so as to undermine our confidence in the outcome of the trial"*); Jackson v. Herring*, 42 F.3d 1350, 1359-62 (11th Cir. 1995) (where the petitioner alleges that counsel was ineffective for failing to object to the prosecutor's use of peremptory challenges, he must demonstrate a reasonable probability that, but for counsel's errors, the result of the trial would have been different). Petitioner has not alleged facts even tending to show a reasonable probability that, but for counsel's failure to object to the way that the trial judge handled the State's *Batson* challenge, the result of his trial would have been different.

The Magistrate Judge finds that Petitioner has not shown that the circuit court's adjudication of his claim that trial counsel was ineffective for failing to object to the way that the trial court handled the State's *Batson* challenge resulted in a decision that was contrary to, or involved an unreasonable application of, *Strickland v. Washington*. Furthermore, he has not demonstrated that the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, the Magistrate Judge recommends that Petitioner's claim that trial counsel was ineffective for failing to object to the way the trial court handled the State's *Batson* challenge be dismissed with prejudice.

**3.   Claim 7(a): Appellate counsel's failure to argue on direct appeal that trial counsel was ineffective for failing to object to the way that the trial court handled the State's *Batson* challenge.**

In Claim 7(a), Petitioner contends that appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for failing to object to the way that the trial court handled the State's *Batson* challenge. Petitioner raised this claim in his motion to amend his Rule 37 petition. The circuit court denied his motion to amend, finding in pertinent part as follows:

> Based upon a review of Defendant's Rule 37 Petition and Motion to Amend Rule 37 Petition, Defendant has failed to demonstrate that he was prejudiced his counsel's alleged errors, and thus, that he is entitled to Rule 37 relief.  Accordingly, Defendant's Rule 37 Petition and Motion to Amend Rule 37 Petition are denied.

Whether the circuit court actually adjudicated the claim on the merits is debatable. Under the circumstances, the Magistrate Judge will not apply the AEDPA's deferential standard in addressing the claim.

As previously noted, Arkansas appellate courts "will not consider ineffective

assistance of counsel as a point on direct appeal unless the issue has been considered by the trial court." *Ratchford*, 357 Ark. at 31, 159 S.W.3d at 306-07; *Alexander*, 55 Ark. App. at 154, 934 S.W.2d at 930.  Prior to filing his direct appeal, Petitioner did not present to the trial court a claim that trial counsel was ineffective for failing to object to the way in which the trial court handled the State's *Batson* challenge, and the trial court did not consider such a claim. Therefore, the Arkansas Court of Appeals would not have considered the claim on the merits on direct appeal if appellate counsel had raised it.  Appellate counsel was not ineffective for failing to argue on direct appeal that trial counsel was ineffective for failing to object to the way that the trial court handled the State's *Batson* challenge.

## C. Recommendation.

THEREFORE, the Magistrate Judge recommends that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be dismissed with prejudice.

Dated this 14th day of June, 2007.


_____/s/ John F. Forster, Jr._____
UNITED STATES MAGISTRATE JUDGE